### *Ex parte* KOEHLER, Receiver, etc.

*(Circuit Court, D. Oregon.* June 26, 1885.)

MUTUAL AND DEPENDENT COVENANTS.

The covenants in the agreement of December 14, 1882, made between the Northern Pacific Terminal Company, of the first part, and the Northern Pacific, the Oregon Railway & Navigation, and the Oregon & California Railway Companies, of the second part, whereby the former undertook to furnish the latter terminal facilities at Portland, for which they agreed to pay, in certain proportions, the interest on the terminal company's bonds and the expense of maintaining such facilities, and keeping up its organization, as rent for the use of such facilities, are mutual and dependent, and therefore the terminal company, having failed to furnish said facilities, is not entitled to the payment of said interest and expenses, and the receiver of the Oregon & California Railway is instructed to act accordingly.

In Equity.

*John W. Whalley,* for the receiver.

DEADY, J. On December 14, 1882, an agreement was entered into between the Northern Pacific Terminal Company, of the first part, and the Northern Pacific Railway Company, the Oregon Railway & Navigation Company, and the Oregon & California Railway Company, of the second part, by which the terminal company undertook to construct, furnish, and maintain adequate terminal facilities, for the use of the parties of the second part, at and near Portland, including a railway bridge across the Wallamet, for the term of 50 years; in consideration of which said parties did "jointly and severally covenant, promise, and agree to and with the party of the first part, and for the benefit of each and every person who shall, or may at any time hereafter become a holder of said bonds, (meaning the bonds, not to exceed five millions of dollars in value, to be issued by the terminal company for the purpose of furnishing said terminal facilities,) or of any coupons thereunto belonging, to pay to the party of the first part, as rental therefor, the following sums:

"(1) A sum equal to the interest, at the rate of 6 per centum per annum, on all said bonds then or at any time outstanding, to be paid in semi-annual installments. (2) A sum sufficient to create a sinking fund for the redemption of said bonds, to be paid in semi-annual installments, commencing ten years from the date of said agreement. (3) A sum sufficient to pay all taxes and insurance on the property of the terminal company, and all repairs thereon, together with the expense of maintaining its organization and the issue and payment of said bonds and coupons, to be paid quarterly."

It is also provided in said agreement that said payments shall be made by the three parties of the second part in the following proportions: By the Northern Pacific Railway and the Oregon Railway & Navigation Companies, 40 per centum thereof, each, and by the Oregon & California Company, the remaining 20 per centum; and that if either of said parties shall fail to pay its proportion of said rental, the same shall be paid by the others of said parties; and if said failure shall in any case continue 30 days, the party of the first part may forfeit and annul all the rights of said defaulting party under said agreement; and shall do so at the request of either of the others of said parties; but the defaulting party shall not thereby be released from any obligation under said agreement.

On June 19th, Mr. Richard Koehler, the receiver of the Oregon & California Railway, in the suit of *Harrison v. Oregon & California Company*, filed his petition in this court, stating that no terminal facilities had been furnished to said corporation by said terminal company, except a depot building on the east side of the Wallamet river, worth not to exceed $6,000, and not absolutely necessary to its business, which is also used by the Oregon Railway & Navigation Company, and an appliance, consisting of railway tracks and barges, for the transfer of cars from one bank of the river to the other; and that the Oregon & California Company has been compelled to furnish, at great expense, its own terminal facilities on each side of the river; that the Oregon & California Company has paid under said agreement its share of the interest on the bonded debt of the terminal company up to December 31, 1883, amounting to $30,858, and that since then and up to December 31, 1884, such interest has been paid by the Northern Pacific Railway and the Oregon Railway & Navigation Companies, and that a semi-annual installment thereof will fall due on June 25th; that no demand was ever made on the Oregon & California Company for payment of any of the expenses and charges incurred under said agreement, except as follows: On January 5, 1885, an account was presented for such charges and expenses up to September 30, 1884, for the sum of $7,371.87; on February 10, 1885, one from October 1 to December 31, 1884, for the sum of $1,078.15; on March 21, 1885, one from January 1, 1883, to January 1, 1885, for the sum of $2,589.96; and payment of the same requested, which was not made, but as the petitioner believes payment thereof was made by the Northern Pacific Railway and the Oregon Railway & Navigation Companies.

In view of these facts the petitioner says he is in doubt whether it is his duty as the receiver of the Oregon & California (1) to pay any portion of the sums claimed by the terminal company; (2) or to pay any portion thereof except such as has accrued since his appointment as receiver; (3) or to pay any portion thereof by him disputed, until the same is adjusted by arbitration; (4) and whether the proper interpretation of said agreement does not make the completion.of adequate terminal facilities a condition precedent to the right to demand said 20 per centum from the Oregon & California Company; and asks for instructions in the premises.

The agreement by the Oregon & California Company to pay 20 per centum of the semi-annual interest on the terminal company's bonds, and the other expenses and charges mentioned therein, appears to me to be, in effect, an agreement to pay so much for the use of terminal facilities to be furnished by the latter company. The interest on the money used in the construction of the facilities, and the cost of keeping them up, is assumed to be the rental value of the same. The agreement is substantially a contract on the part of the terminal company to construct terminal facilities and lease them to the Oregon & California Company for so much a year, and a contract by the latter company to accept such lease, occupy the premises, and pay the rent therefor, in the manner provided.

The parties to this agreement must have contemplated and intended that the construction of the facilities would proceed *pari passu* with the issue of the bonds, and that the parties of the second part would be in the enjoyment of the same when and as they were called on to pay rent for the use of them. The covenants of the parties to the agreement are mutual and dependent—to be performed concurrently. And therefore neither party can complain of a default by the other, unless it can also show a performance or offer to perform on its part. *Neis* v. *Yocum*, 9 Sawy. 24. Upon this view of the matter, and assuming what is alleged in the petition, that no facilities of any consequence have been constructed or furnished to the Oregon & California Company, the terminal company is plainly in default, and cannot compel the further payment of the rent by the former, and is not, in justice, entitled to it; and the receiver is so instructed.

Whether the contract to pay this interest can, under any circumstances, be construed as having been made with the holder of these bonds, and whether such holder can, therefore, compel payment by the Oregon & California Company of its proportion thereof, directly to himself, is a question not now before the court, as it does not appear that any one but the terminal company is making any demand for it. But if the terminal company, or the holder of any interest coupon of these bonds, is dissatisfied with this instruction, application may be made for leave to commence legal proceedings against the receiver, when the matter may be further heard and considered.